IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　v.<br><br>**CONTINENTAL CASUALTY COMPANY,**<br><br>　　　　　　　　　　**Defendant.** | **CASE NO.** |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Hartford Fire Insurance Company (collectively "Plaintiff" or "Hartford") brings this complaint and in support thereof states as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment, and for other relief, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining an actual controversy among the parties and construing the rights and legal obligations arising under certain contracts between Hartford's insureds and Continental Casualty Company's insured, Red Coats, Inc., d/b/a Admiral Security Services ("Admiral").

2. Hartford seeks a declaration that the defendant Continental Casualty Company ("CNA") owes a duty to defend and indemnify Greenpenz 2600 Virginia Avenue, LLC ("Greenpenz"), and Penzance Management LLC ("Penzance") in connection with a personal injury action asserted by Alma Ahmad Esfandiary in the matter of *Esfandiary v. Greenpenz*

*2600 Virginia Avenue LLC, et al.*, case number 2018 CA 003311 B, in the Superior Court of the District of Columbia (the "Underlying Action"). Hartford also seeks damages from CNA for reimbursement of costs that Hartford has paid to date to defend Greenpenz and Penzance.

3. There is an actual bona fide and substantial issue in dispute concerning CNA's obligation to defend and indemnify Greenpenz and Penzance in connection with the Underlying Action. Hartford believes that CNA is obligated to defend and indemnify Greenpenz and Penzance in connection with the Underlying Action, while CNA has rejected that obligation. The purpose of this case is to resolve this dispute.

## THE PARTIES

4. Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, Defendant Continental Casualty Company ("CNA") is an Illinois corporation with its principal place of business in Illinois.

6. Complete diversity of citizenship exists between Hartford, a citizen of Connecticut, and CNA, a citizen of Illinois.

7. This Complaint seeks a declaration that CNA has a duty to defend and indemnify Greenpenz and Penzance against the Underlying Action. Hartford seeks reimbursement for sums it has and will incur defending Greenpenz and Penzance, as well as for any resulting indemnity relating to the Underlying Action.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. §1332, this Court has original jurisdiction over this action between citizens of different states in which the amount in controversy is in excess of $75,000, exclusive of interest and costs.

9. The Court has personal jurisdiction over CNA, which does business as an insurer in Connecticut.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because CNA is subject to jurisdiction in this District, and has communicated with Hartford, a Connecticut resident, concerning CNA's decision to withdraw the defense of two of Hartford's insureds.

## FACTS

11. Hartford issued a commercial general liability policy number 02 UEN HE9804 to Greenfield Partners, LLC, in effect from November 20, 2014 to November 20, 2015 (the "Hartford Policy"). Greenpenz is an additional named insured under the Hartford Policy.

## THE SERVICE AGREEMENT

12. At all relevant times, Greenpenz was the owner of a certain portion of the Watergate parking garage, located at 2600 Virginia Avenue, NW, Washington, D.C. (the "Property")

13. Pursuant to the terms of a service agreement dated April 11, 2013 (the "Service Agreement") between Admiral, Penzance and Greenpenz, Admiral agreed to provide certain services to Penzance, the management company for the Property owned by Greenpenz.

14. Specifically, Admiral agreed to provide "Security and Protective Services" at the Property, as per the terms of the Service Agreement. *See* Service Agreement, Exhibit A, Specifications.

15. The Service Agreement provided, *inter alia,* that Admiral was to provide security protective services with the intention that the subject Property be kept safe at all times

3

and required Admiral to conduct routine patrols and inspection of the Property.

16. Pursuant to Paragraph 4.c of the Service Agreement, Admiral was obligated to immediately advise Penzance and Greenpenz of any material information concerning the Property, including the existence of any dangerous conditions.

17. Admiral further agreed to indemnify and hold harmless Penzance and Greenpenz from and against all liabilities, claims, damages, losses, causes of action, judgments, costs and expenses, including reasonable attorneys' fees, arising out of or resulting from Admiral's failure to fully and timely perform its obligations or the negligent or willful act or omission of Admiral. *See* Service Agreement at ¶ 8.

18. In addition, the Service Agreement required Admiral to maintain general liability insurance with an endorsement naming Penzance and Greenpenz as additional insureds and with an endorsement providing that Admiral's insurer waive all rights of recovery by way of subrogation against Penzance and its respective partners, agents, employees and representatives in connection with any loss or damage covered by such policy. The Service Agreement also required that Admiral's general liability insurance be primary as respect to the Penzance and Greenpenz policies and that any other insurance maintained by Penzance and Greenpenz would be excess and non-contributing with Admiral's insurance.

19. Upon information and belief, CNA issued a Commercial General Liability policy number 2057339048 to Admiral for October 1, 2015 to October 1, 2016 policy period containing liability limits of $2,000,000 each incident subject to a $2,000,000 aggregate (the "CNA Policy").

20. Greenpenz and Penzance are either specifically named or otherwise qualify as additional insureds under the CNA Policy.

21. The CNA Policy contains a blanket additional insured provision as follows:

A. Section II – Who is An Insured is amended to include as an additional insured:

    1. Any person or organization who you are required by written contract to add as an additional insured under this Coverage Part; and

    2. The particular person or organization, if any, scheduled above.

B. The insurance provide to the additional insured is limited as follows:

    1. The person or organization is an additional insured only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused in whole or in part by:

        a. Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your ongoing operations specified in the "written contract"; or

        b. "Your work" that is specified in the "written contract" but only for "bodily injury" or "property damage" included in the "products-completed operations hazard," and only if:

            1. The "written contract requires you to provide the additional insured such coverage; and [cont'd next page]

>  2. This Coverage Part provides such coverage.

## THE UNDERLYING ACTION

22. On or about May 10, 2018, Alma Esfandiary ("Esfandiary") filed a claim for personal injury against Greenpenz 2600 Virginia Avenue, LLC, Greenfield Partners LLC ("Greenfield"), Penzance Watergate Management LLC and Penzance Management LLC. [1]

23. Esfandiary alleged that on November 1, 2015, she sustained serious injuries arising out of a fall at the Watergate underground parking garage (the "Incident"). Specifically, Esfandiary alleged that she "tripped and fell on broken and uneven concrete." Esfandiary further alleged, inter alia, that the defendants "Failed to warn Plaintiff Alma Esfandiary of the dangerous condition when Defendants knew or in exercise of ordinary care should have known that said warning was necessary to prevent injury to Plaintiff Alma Esfandiary." Esfandiary alleged negligence against all defendants.

24. On or about October 9, 2018, Esfandiary filed a Second Amended Complaint, adding Admiral Security Services, Inc. ("Admiral") as a defendant to the action. Similar to the original complaint, Esfandiary alleged negligence against all defendants for a failure to maintain the premises, failure to warn of the dangerous condition, and failure to make a reasonable inspection of the premises. Esfandiary's spouse also asserted a claim for loss of consortium.

25. Although Esfandiary's counsel attempted to serve a summons upon Admiral Security Services, Inc. on or about November 1, 2018, Plaintiff sought permission to correct a

---

[1] On or about June 7, 2018, Plaintiff dismissed Greenfield Partners LLC and Penzance Watergate Management LLC from the action.

"misnomer" to reflect the name Admiral Security Services, and to allow the Esfandiary to file a Third Amended Complaint.

26. On or about December 6, 2018, Hartford made a tender against Admiral for a defense as per the terms of the Service Agreement.

27. On or about December 21, 2018, the court granted the motion to file a third amended complaint, naming Red Coats, Inc. d/b/a Admiral Security Services as an additional defendant.

28. On or about February 5, 2019, Admiral filed a motion to dismiss or, in the alternative, Motion for Summary Judgment. Admiral argued that the statute of limitations expired on November 1, 2018, and Admiral first learned of the lawsuit on November 16, 2018, and was not served with the Third Amended Complaint until January 16, 2019.

29. On or about February 15, 2019, Penzance Management and Greenpenz 2600 Virginia Avenue, LLC filed a cross claim against Admiral, asserting, *inter alia*, its rights under the Contract for defense and indemnity.

30. On or about February 22, 2019, CNA advised Greenpenz and Penzance that CNA agreed to provide a defense to Greenpenz and Penzance, subject to a reservation of rights.

31. In its February 22, 2019 correspondence, CNA stated, *inter alia*, "We agree Greenpenz qualifies as an Additional Insured under this policy issued to Red Coats/Admiral Security Services ("Admiral") but only for "bodily injury" arising out of Admiral's actions as a security company as outlined in the written contract between Greenpenz and Admiral. No coverage is afforded to Greenpenz for their independent or sole negligence."

32. On or about June 13, 2019, the Court in the Underlying Action granted Admiral's motion to dismiss on the grounds of statute of limitations.

33. On or about July 16, 2019, CNA advised Greenpenz, Penzance, and Hartford that, based on the June 13, 2019 dismissal of Admiral from the action, that the "allegations of the complaint no longer trigger CNA's additional insured coverage." CNA further advised Greenpenz and Penzance that CNA would be "withdrawing the defense for Greenpenz and Penzance in response to the court's order dismissing Admiral from the plaintiffs' complaint."

34. On or about August 1, 2019, Hartford responded to CNA's notification by pointing out that the Esfandiary complaint still implicated Admiral's duties to Greenpenz and Penzance under the Service Agreement. Hartford additionally reminded CNA that Admiral contractually owes a defense and indemnification to Greenpenz and Penzance based on the terms of the Service Agreement between the parties.

35. On or about August 8, 2019, CNA generally responded to Hartford's August 1, 2019 letter by stating, "[n]othing has changed since our July 16, 2109 letter". Neither CNA's August 8, 2019 letter or its July 16, 2019 letter addressed or disputed Greenpenz's and Penzance's contractual right to a defense and indemnification.

36. Esfandiary alleged that she "tripped and fell on broken and uneven concrete" (Second Amended Complaint at ¶10) while walking through the portion of a parking garage Greenpenz owned, Penzance managed, and, significantly, the Property where Admiral agreed to provide security protective services with the intention that the subject Property be kept safe at all times and required Admiral to conduct routine patrols and inspection of the Property.

37. In the Underlying Action, Esfandiary alleged that the defendants "Failed to warn Plaintiff Alma Esfandiary of the dangerous condition" where, as per the terms of the Service Agreement, Admiral was obligated to immediately advise Penzance and Greenpenz of any material information concerning the Property, including the existence of any dangerous

8

conditions.  Service Agreement at ¶ 4.c.

38. Esfandiary's claims against Greenpenz and Penzance constitute claims, damages, demands, costs, expenses and liabilities allegedly arising from Admiral's acts or omissions in the performance of its security services under the Service Agreement.

39. The allegations in the Underlying Action against Greenpenz and Penzance fall within the scope of the indemnification provisions of the Service Agreement, and therefore, Admiral has a duty to defend, indemnify, and hold harmless Greenpenz and Penzance against all claims against them in the Underlying Action.

40. The allegations of the Underlying Action further fall within the scope of the blanket additional insured provision under the CNA Policy because Esfandiary has alleged facts that implicate Admiral's acts or omissions, either in whole or in part, as described under the Service Agreement.

### COUNT I – DECLARATORY JUDGMENT – DUTY TO DEFEND

41. Hartford incorporates by reference and re-allege each and every allegation contained in paragraphs 1-40 above as if fully set forth herein.

42. Pursuant to the terms of the Service Agreement, Admiral agreed to indemnify and hold harmless Greenpenz and Penzance from all liabilities, claims, damages, losses, causes of action, judgments, costs and expenses, including reasonable attorneys' fees, arising out of or resulting from Admiral's failure to fully and timely perform its obligations or the negligent or willful act or omission of Admiral.

43. In addition, the Service Agreement required Admiral to maintain general liability insurance with an endorsement naming Penzance and Penzance's affiliate, Greenpenz, as additional insureds and with an endorsement providing that Admiral's insurer waive any rights of

recover by way of subrogation against Penzance and Greenpenz with respect to any loss covered by such policy. The Service Agreement also required that Admiral's general liability insurance be primary with respect to Penzance and Greenpenz, and that any other insurance maintained by Penzance and Greenpenz would be excess and non-contributing with Admiral's insurance.

44. The CNA Policy covers claims asserted against Greenpenz and Penzance in the Underlying Action.

45. The CNA Policy applies as primary coverage with respect to the defense of Greenpenz and Penzance against the Underlying Action, without rights of contribution against Greenpenz's and Penzance's coverage.

46. CNA is obligated to defend Greenpenz and Penzance as additional insureds against the Underlying Action.

47. CNA is obligated to defend Greenpenz and Penzance pursuant to the contractual indemnification provision in the Service Agreement.

48. To the extent that Hartford has paid or will pay for Greenpenz's and Penzance's defense, it has standing to seek a declaration of CNA's defense obligations.

49. The instant controversy between the parties regarding presentation of a defense and insurance coverage arising from the subject Incident is of a justiciable nature and the Plaintiff has a practical interest in the declarations sought.

50. Hartford is entitled to a declaratory judgment in favor of Hartford, declaring that CNA has an obligation to defend Greenpenz and Penzance for claims arising out of the Incident.

### COUNT II – DECLARATORY RELIEF  - DUTY TO INDEMNIFY

51. Hartford incorporates by reference and re-allege each and every allegation contained in paragraphs 1-50 above as if fully set forth herein.

52. Pursuant to the terms of the Service Agreement, Admiral agreed to indemnify and hold harmless Greenpenz and Penzance from all liabilities, claims, damages, losses, causes of action, judgments, costs and expenses, including reasonable attorneys' fees, arising out of or resulting from Admiral's failure to fully and timely perform its obligations or the negligent or willful act or omission of Admiral.

53. In addition, the Service Agreement required Admiral to maintain general liability insurance with an endorsement naming Penzance and Penzance's affiliate, Greenpenz, as additional insureds and with an endorsement providing that Admiral's insurer waive any rights of recover by way of subrogation against Penzance and Greenpenz with respect to any loss covered by such policy. The Service Agreement also required that Admiral's general liability insurance be primary with respect to Penzance and Greenpenz, and that any other insurance maintained by Penzance and Greenpenz would be excess and non-contributing with Admiral's insurance.

54. As per the contractual indemnification provision of the Service Agreement, CNA is obligated to indemnify Greenpenz and Penzance for any liability arising out of or resulting from Admiral's failure to perform its obligations under the Service Agreement.

55. CNA is obligated to indemnify Greenpenz and Penzance as additional insureds against the Underlying Action.

56. The CNA Policy applies as primary coverage with respect to the indemnity of Greenpenz and Penzance against the Underlying Action.

57. The instant controversy between the parties regarding presentation of a defense and insurance coverage arising from the subject Incident is of a justiciable nature and the Plaintiff has a practical interest in the declarations sought.

58. Hartford is entitled to a declaratory judgment in favor of Hartford, declaring that

CNA has an obligation to indemnify Greenpenz and Penzance for claims arising out of the Incident.

## PRAYER FOR RELIEF

WHEREFORE, Hartford hereby requests the following relief:

1. That the Court enter judgment declaring that under the CNA Policy:

    (i) Greenpenz and Penzance are additional insureds;

    (ii) CNA has a duty to defend Greenpenz and Penzance as additional insureds and/or pursuant to the contractual indemnification provision of the Service Agreement;

    (iii) That duty is primary and noncontributory with Hartford's obligation to defend Greenpenz and Penzance;

    (iv) CNA is obligated to reimburse Hartford Fire for any fees and costs incurred in the defense of Greenpenz and Penzance to date;

    (v) CNA has a duty to defend Greenpenz and Penzance going forward; and

    (vi) CNA has a duty to indemnify for any liability in the Underlying Action.

2. That the Court award Plaintiffs:

    a. Money damages;

    b. Attorneys' fees;

    c. Costs; and

    d. Such other and further relief as is just and equitable.

Dated:  November 12, 2019						Respectfully submitted,


                PLAINTIFF
                HARTFORD FIRE INSURANCE COMPANY

              By:    /s/ Katherine A. Scanlon
                Katherine A. Scanlon (ct18129)
                James J. Reardon (ct13802)
                Reardon Scanlon LLP
                45 South Main Street, Suite 305
                West Hartford, CT 06107
                Telephone 860-955-9451
                Facsimile 860-760-6853
                katherine.scanlon@reardonscanlon.com
                james.reardon@reardonscanlon.com